IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

United States of America :
:
:
vs : 4:01-CR-00310
:
:
Gary Rhines :

BEFORE: Honorable James F. McClure, Jr.

PLACE: Williamsport, Pennsylvania

PROCEEDINGS: Sentencing Hearing

DATE: Thursday, July 1, 2004

REPORTED BY: Joan D. Steinbach, RMR
Official Court Reporter

APPEARANCES:

For the United States: John J. McCann, Esquire
Assistant United States Attorney
U.S. Attorney's Office
240 West Third Street, Suite 316
Williamsport, PA 17701

For the Defendant: Ronald C. Travis, Esquire
Rieders Travis Law Offices
161 West Third Street
Williamsport, PA 17701

(3:00 p.m., convene.)

MR. TRAVIS: Good afternoon, Your Honor.

MR. McCANN: Good afternoon, Your Honor.

THE COURT: Mr. McCann.

MR. McCANN: Thank you, Your Honor.

This is the matter of *United States versus Gary Rhines*, 4:CR-01-0310.

The defendant was convicted after trial of distribution of cocaine base. The jury found in its verdict that he distributed more than 50 grams of cocaine base.

Pursuant to the statute in Title 21, Section 851, notice was given to the defendant of his three prior drug convictions. Your Honor has ruled on the amended notices. And the matter has been set down for sentencing and the government would move sentencing at this time.

THE COURT: Thank you, sir.

The Court notes, as usual, that there is an addendum to the presentence report containing the probation officer's certification that the presentence report has been disclosed to the defendant, his attorney, and counsel for the government; and that the content of the addendum has been communicated to the parties.

Mr. Rhines, is that so, did you get a copy of the presentence report?

THE DEFENDANT: Yes, I did.

THE COURT: And did you have a chance to go over it with Mr. Travis and, in fact, review it with him?

THE DEFENDANT: Yes, I have.

THE COURT: Thank you.

It notes that the government has no objection to the report as circulated. Is that still true, Mr. McCann?

MR. McCANN: Yes, it is, Your Honor.

THE COURT: It, on the other hand, lists several objections on behalf of the defendant. Before I call on you, Mr. Travis, with respect to those, I will note a couple things.

The Court has ruled today on some of the requests that Mr. Rhines had made in a pro se capacity recently. And so I think copies of that have been provided to you, Mr. Travis; is that right?

MR. TRAVIS: Yes.

THE COURT: We're all aware of the recent decision of the United States Supreme Court in *Washington versus Blakely*. I assume we're aware of that. Mr. McCann?

MR. McCANN: Quite aware of it, Your Honor.

THE COURT: Mr. Travis?

MR. TRAVIS: Yes, Your Honor.

THE COURT: Now, it did not, and it expressly did not rule on federal sentencing guidelines, however, the impact will be interesting to observe. I have been advised

that I think at least two district courts have held the federal sentencing guidelines unconstitutional, one immediately after the United States Supreme Court ruling.

It may well be that a court at some point determines that the manner in which the guidelines themselves in this case were calculated would be subject to question under that ruling. However, the guidelines are trumped by the statutory mandatory life sentence.

And, you know, the extent you want to further indicate any argument in that respect for the record, Mr. Travis, you're certainly welcome to do that, but I wanted to make note for the record that the Court was aware of the decision, but the Supreme Court did not act with respect to the federal guidelines, and this Court today is not going to take any action in that regard either.

But, Mr. Travis.

MR. TRAVIS: Your Honor, as I understood the order that was entered with respect to Mr. Rhines' pro se motion, the Court left open the argument concerning the guidelines, and also --

THE COURT: That's right.

MR. TRAVIS: -- a second argument.

With respect to the guideline argument, as I understand both *Apprendi* and *Blakely*, they have no impact on enhancements that arise out of prior convictions.

THE COURT: That's my understanding as well.

MR. TRAVIS: Even if this was a guidelines sentence, based on prior convictions I'm not sure that we could take advantage of either of those cases.

THE COURT: Yeah, I don't think that you could.

MR. TRAVIS: As I understand the sentence which will be imposed today, it is not a guidelines sentence.

THE COURT: Correct.

MR. TRAVIS: It is an 841 sentence after 851 notice.

THE COURT: Correct.

MR. TRAVIS: And that's something separate and apart from the guidelines.

And so I cannot in good faith argue to this Court that there is any prohibition against the calculated sentence which will be imposed. If I'm wrong, that's another item Mr. Rhines can put in his 2255.

THE COURT: That's right.

MR. TRAVIS: I've looked at the case out of Utah, I think it's *Cloakley*, (phonetic) where they held the guidelines unconstitutional. Again, I don't see that that helps us because this is not a guidelines sentence, it is statutory sentence, as I understand it.

THE COURT: I'm aware of that case, but you're one step ahead of me, I haven't had a chance to read it, but I

agree with that.

MR. TRAVIS: And I think there's a second one out of Maine, but I don't know the name of that one.

THE COURT: There's one, it's either Maine or Massachusetts, that came out prior to the *Blakely* holding. That's like a 174-page opinion, which --

MR. TRAVIS: That one I don't have, and I have not read that one.

THE COURT: Well, that may be a little academic after the Supreme Court -- well, who knows.

MR. TRAVIS: And as long as I'm standing and addressing sentencing issues, at least as I -- again, as I understood the Court's order, the issue or the factual scenario concerning Mr. Marino having previously been the District Attorney and subsequently becoming the U. S. Attorney was something that I could address.

There's no question that I believe at the point in time when the state prosecution against Mr. Rhines was initiated, Mr. Marino was the District Attorney of Lycoming County. I don't think there's any question that at the time the state agreed to allow the federal government to go forward with the prosecution, that Mr. Marino was the District Attorney. And there's no question that at some point after the federal government took over the prosecution, Mr. Marino did, in fact, get confirmed and

sworn in as the U.S. Attorney.

I personally fail to see where we go from there as far as the argument is concerned. And, therefore, again, I, in good faith, cannot make any sort of argument to the Court that there is anything improper that this Court should explore.

For purposes of the record, I wanted to make that clear. And if I'm -- again, if I'm wrong in that judgment, you know, it's another issue which can be raised in the 2255.

THE COURT: All right. I would agree with that.

And I think that those facts that you've just recited have no -- carry with them no legal impact that I'm aware of either.

And I believe that your objections as stated and as referenced by the probation officer in his addendum have essentially been ruled upon by the Court previously. And to the extent that they have not, they're overruled. I think we've addressed those along the way in one place or another.

Do you agree with that?

MR. TRAVIS: My understanding is that all issues, sentencing issues, other than the two I just mentioned, have previously been addressed by this Court --

THE COURT: That's my --

MR. TRAVIS: -- in order form.

THE COURT: -- understanding, too.

That being the case, the Court adopts the presentence report and guideline application without change. That results under the guidelines with a total offense level of 37, a criminal history category of four. The net result, however, is a mandatory life imprisonment by virtue of the act of Congress that has provided for that penalty under the circumstances here presented. And also provides for a supervised release term of ten years, a fine range of $20,000 to $8 million. Any fine is waived because of the defendant's inability to pay.

If you would all come forward then, please.

Mr. Travis, is there anything further you would like to say on behalf of your client? We all recognize that what's said here is rather academic in a sense that the Court is bound by the statute to impose the sentence that is about to be imposed.

But, nevertheless, any comments you wish to make with respect to the whole matter are welcome by the Court.

MR. TRAVIS: Your Honor, I have given some thought to, you know, doing some sort of Dennis Miller type of rant about sentencing guidelines and enhanced sentences, but I recognize that it's not going to do anybody any good and --

THE COURT: That's not the problem. It's not the sentencing guideline enhancements.

MR. TRAVIS: Well, I understand. I understand that. It's the statutory enhancements.

THE COURT: I mean problem of Mr. Rhines.

MR. TRAVIS: Yeah. And, therefore, you know, I recognize that you're mandated to give him a life sentence. I believe Mr. Rhines recognizes that. And so I don't have really anything to say.

THE COURT: Mr. Rhines, what would you like to tell the Court? Anything at this point? I mean, it's been a long time coming.

THE DEFENDANT: No disrespect to the Court, I really don't have no issues to address as far as like remorse as far as the case because I still believe that I'm innocent. But I wanted to make it clear for the record if any pro se motion that I had wrote can I raise them issues for appeal that I have under my criminal docket sheet, can I raise the issues inside the motions for the Third Circuit?

THE COURT: I don't understand what you just said.

THE DEFENDANT: Well, the motions that I have filed pro se, all the motions.

THE COURT: All of them?

THE DEFENDANT: Right. I would like to raise the issues inside them motions that are pro se for the Third Circuit to review, if that's possible?

THE COURT: Well, you'll have to speak to the

attorney that represents you on appeal. And if you're challenging the effective assistance of Mr. Travis as your trial counsel, then it seems highly probable the Third Circuit will appoint you new counsel.

THE DEFENDANT: Okay.

THE COURT: But they don't always do that.

THE DEFENDANT: I just wanted to ask. I didn't know.

THE COURT: Well, I'm not telling you what the Third Circuit will recognize or what it won't recognize, all I'm telling you is to make sure that you bring all of those matters to the attention of your counsel.

THE DEFENDANT: Okay.

THE COURT: Mr. McCann.

MR. McCANN: I have nothing to add, Your Honor. We would move sentencing.

THE COURT: Well, as I've already said, whatever the guideline calculation might be, it's trumped by the statutory requirement of Section 841(b) of Title 21 of the United States Code by virtue of the fact that the defendant has two or more prior convictions for felony drug offense that have become final, and that whole matter has been fully explored at great length. And the Court is convinced that based on the notice and the convictions, and this conviction, that the Court is required to impose a sentence

of life imprisonment and, therefore, will impose the following sentence:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Gary Rhines, be committed to the custody of the Bureau of Prisons to be imprisoned for the remainder of his natural life. In accordance with statutory provisions, the defendant shall, if released from imprisonment, be placed on supervised release for a term of ten years. Within 72 hours of release from the custody of the Bureau of Prisons the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release the defendant shall not commit another federal, state, or local crime; shall comply with the standard conditions that have been adopted by this court; and shall comply with the following additional special condition: The defendant shall submit to one drug test within 15 days of placement on supervised release, and at least two periodic drug tests thereafter.

It is further ordered that the defendant shall pay to the clerk, U.S. District Court, a special assessment of $100, due immediately. In consideration of the defendant's financial condition and earning capacity, the fine is waived.

Mr. Rhines, you can appeal your conviction and

sentence to the United States Court of Appeals. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law. With few exceptions any notice of appeal must be filed within ten days of judgment being entered in your case.

If you're unable to pay the costs of an appeal you may apply for leave to appeal informa pauperis and, if approved, counsel will be appointed for you and you will not be required to pay any costs. If you so request the clerk of the court will prepare and file a notice of appeal on your behalf. That concludes the sentence.

Mr. Travis, are you going to take care of that?

MR. TRAVIS: Yes, I'll take care of drawing up -- filing the notice of appeal.

THE COURT: What am I missing?

MR. TRAVIS: Mr. Rhines asked me, and I forgot to mention to the Court, whether the Court would be willing to recommend that the Bureau of Prisons house him in an appropriate facility as close to Philadelphia as possible?

THE COURT: If that's his desire, I certainly have no objection to that. Mr. McCann?

MR. McCANN: I have no objection to it. It's up to the Bureau of Prisons, Your Honor.

THE COURT: Right. Mr. Rhines, you understand that

I can only recommend that?

THE DEFENDANT: Yes, sir.

THE COURT: And it depends on what institution they determine to be appropriate.

So we'll add to the sentence the following: The Court recommends that the Bureau of Prisons place the defendant in a suitable institution as close as possible to Philadelphia, Pennsylvania.

Mr. Travis, anything else?

MR. TRAVIS: No.

THE COURT: Good luck to you, Mr. Rhines. I think that concludes the proceedings.

MR. TRAVIS: Could Mr. Rhines --

THE COURT: Have a chance to talk to the folks?

MR. TRAVIS: Yes.

THE COURT: What's the -- any reason why he can't visit them for about 15 minutes?

THE DEPUTY MARSHAL: If ordered by the Court, we have no problem.

THE COURT: Okay. You are directed to allow visitation for the next 15 minutes with his family.

THE DEPUTY MARSHAL: Yes, sir.

MR. TRAVIS: Thank you, Your Honor.

(3:14 p.m., court adjourned.)

REPORTER'S CERTIFICATE

I, Joan D. Spearing, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

____________________________
Joan D. Spearing, RMR
Official Court Reporter

REPORTED BY:

JOAN D. SPEARING, RMR
Official Court Reporter
United States District Court
Middle District of Pennsylvania
240 West Third Street, Suite 415
Williamsport, PA 17701-6438

(The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)